NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ROBERT FRANKLIN BROWN, *Appellant*.

No. 1 CA-CR 13-0807

FILED 9-9-14

Appeal from the Superior Court in Maricopa County
No. CR2012-006890-001
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Droban & Company, PC, Anthem
By Kerrie M. Droban
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

**G E M M I L L**, Judge:

¶1  Robert Brown was convicted of first degree felony murder, drive-by shooting, and aggravated assault. He appeals his convictions and the sentences imposed. For the reasons set forth below, we affirm.

¶2  Brown's counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), stating that she has searched the record and found no arguable question of law and requesting that this court examine the record for reversible error. Brown was afforded the opportunity to file a *pro se* supplemental brief and he has done so. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999).

## FACTS AND PROCEDURAL HISTORY

¶3  On May 6, 2012, Brown and Allen Robinson went to a Circle K to purchase alcohol. The clerk refused to sell them alcohol because they appeared drunk. They then asked two minors, L.G. and F.J., to purchase alcohol for them, but they declined to do so. F.J. drove off eastbound on Hatcher Road with L.G. in the passenger seat. Shortly thereafter, Brown, driving, and Robinson, sitting in the passenger seat brandishing a hand gun, caught up with L.G. and F.J. Once they caught up, Brown pulled into the lane next to F.J.'s vehicle. Robinson began yelling at L.G. and F.J., while pointing the gun at them. Robinson then fired two shots at them. A bullet struck F.J. in his side but he sped up the vehicle. Brown continued driving next to F.J.'s vehicle. Robinson fired two more times. One bullet struck F.J. in his head, who died as a result of multiple gunshot wounds, and the other struck L.G.

¶4  In May 2013, Brown was found guilty by a jury of first degree felony murder, a class 1 dangerous offense, drive-by shooting, a class 2 dangerous felony, and aggravated assault, a class 3 dangerous felony. The trial court then conducted a hearing on aggravating circumstances. The jury found two aggravating circumstances beyond a reasonable doubt for each count: a dangerous offense that involved the discharge of a deadly weapon and the presence of an accomplice.

¶5  At the sentencing hearing, the court weighed the two aggravating circumstances and various mitigating circumstances. Brown was sentenced to life imprisonment with a possibility of release after 25 years for the felony murder conviction and 13 years each for the drive-by shooting and aggravated assault convictions, with all three sentences to be

served concurrently, and 485 days of presentence incarceration applied to each. Brown filed a timely notice of appeal and amended notice of appeal from the judgment and sentence. We have jurisdiction under the Arizona Constitution Article VI, section 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

¶6 We view the evidence in the light most favorable to sustaining the jury verdicts. *State v. Carrasco*, 201 Ariz. 220, 221, ¶ 1, 33 P.3d 791, 792 (App. 2001). In his supplemental brief, Brown raises four arguments, which we examine in turn.

### Ineffective Assistance of Counsel

¶7 Brown makes two claims of ineffective assistance of counsel. First, Brown claims his attorney refused to call a witness that Brown believed would impact the case. Brown alleges his attorney insisted Brown testify instead. Second, Brown claims that he did not agree with his attorney's strategy during the case. He states, "I did not want to win my case the way he had plan[ed] to do it, which was lie or bend the truth."

¶8 The Arizona Supreme Court has held that ineffective assistance of counsel claims cannot be brought on direct appeal. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002). Such claims must be asserted in Rule 32 post-conviction relief proceedings. *Id*. We cannot address Brown's ineffective assistance of counsel claims in this direct appeal.

### Unfair Prejudice

¶9 Brown contends he was unfairly prejudiced in the eyes of the jurors because a security device on his leg and back were allegedly visible to jurors, thus alarming jurors that he was in custody.[1] We review Brown's claim of unfair prejudice for fundamental error because Brown did not object at the trial court. *See State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005). He alleges that jurors saw the restraints, but he does not point to evidence in the record to support this contention. *See State v. McMurtrey*, 136 Ariz. 93, 98, 664 P.2d 637, 642 (1983) ("An appellate court will not find error on the ground that the defendant was shackled unless it is shown that the jury saw the shackles."); *see also State v. Mills*, 196 Ariz. 269, 271 ¶ 8, 995 P.2d 705, 707 (App. 1999) (to warrant mistrial, appellant

---

[1] Brown does not challenge the use of restraints.

required to show he suffered prejudice from jurors' observation of him in restraints).

¶10          "The question is whether the defendant was prejudiced by what the jury saw, not the mere fact that it was seen." *State v. Johnson*, 147 Ariz. 395, 399, 710 P.2d 1050, 1054 (1985).  Brown did not request that the trial court ask the jurors if they were in fact aware of the restraints, nor did he seek "to make an evidentiary record after trial." *See State v. Apelt*, 176 Ariz. 349, 361, 861 P.2d 634, 646 (1993) (defendant could have, but did not, request post-trial voir dire of jury to identify any prejudice resulting from exposure to defendant in handcuffs or shackles).  Brown has made no such record.  Nor has he demonstrated how or why, on this record, an appellate court should find prejudice.  Because the record does not reveal any prejudice to Brown from his security device, we conclude there was no error.

**Jury Bias & Prejudice**

¶11          In his supplemental brief, Brown raises two new arguments regarding alleged incidents that occurred during voir dire. He contends these incidents prejudiced him and made the jury biased. Because he did not raise these arguments during jury selection, we review them for fundamental error only. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607.

¶12          Brown argues that during jury selection, members of the jury pool expressed Brown "was guilty already" because he is African-American.  A review of the record supports that there were two members of the jury pool who made comments about an inability to be fair and impartial because of Brown's race.

¶13          During voir dire, one juror stated he was racist.  For that reason, he believed Brown "probably did kill [the victim]."  In open court the judge asked if the juror meant that "because [Brown] is African-American, he did it?"  The juror responded, "[p]robably so."  The judge probed further, asking, "[y]ou still, in today's day and age, feel that way?"  The juror again affirmed to which the judge responded, "[i]f you feel like that, you are exactly right; you are not qualified to be here."  Neither party objected to the juror's release for cause.

¶14          Later, a second juror claimed he was "biased" and thus unable to be fair and impartial because he had been the victim of a crime perpetrated by an African-American.  The court dismissed him for cause and there was no objection from either party.  When the court, near the end

of jury selection, asked if the defense passed the panel, Brown's attorney answered affirmatively.

¶15        The burden is on the party challenging the jury panel to show that the panel selection was a "material departure from the requirements of law." *State v. Greenwalt*, 128 Ariz. 150, 167, 624 P.2d 828, 845 (1981). To do so, the challenging party must show that the jurors "could not be fair and impartial." *State v. Reasoner*, 154 Ariz. 377, 383-84, 742 P.2d 1363, 1369-70 (App. 1987). This court cannot assume comments made by perspective jurors tainted the entire panel; the record must affirmatively present proof that a fair and impartial jury was not seated. *See id.*; *Greenwalt*, 128 Ariz. At 167, 624 P.2d at 845.

¶16        We conclude there was no error, despite the ugliness of the prospective jurors' comments, because we cannot find evidence of juror prejudice in the record nor does Brown show that the impaneled jury was biased or that actual prejudice existed. *See id.*; *State v. Tison*, 129 Ariz. 526, 535, 633 P.2d 335, 344 (1981) ("Unless there are objective indications of jurors' prejudice, we will not presume its existence"). Additionally, the jurors were instructed that they must not be influenced by prejudice and that they must decide on the basis of the evidence presented in court and the law as provided by the trial court. Furthermore, the impaneled jurors were sworn to duty, presumably using the standard oath set forth in Criminal Rule 18.6, in which they commit to render a verdict in accordance with the law and the evidence. Ariz. R. Crim. P. 18.6. We are aware of no evidence in the record that the racist comments of two prospective jurors tainted the empaneled jury and our review of the record does not support Brown's contention the jury was biased or that he was prejudiced. *See, e.g.* *State v. Davis*, 137 Ariz. 551, 558, 672 P.2d 480, 487 (App. 1983) (noting the court could not make an assumption the jury was tainted).

¶17        Additionally, Brown argues unfair prejudice because the final jury panel did not include any African-Americans. A "defendant in a criminal case is entitled to a fair and impartial jury for the trial of his case, but he is not entitled to be tried by any particular jury." *State v. Arnett,* 119 Ariz. 38, 50, 579 P.2d 542, 554 (1978)). The record does not reflect that African-Americans were systematically excluded during the jury-selection process nor were any *Batson* challenges made. *See State v. Garza,* 216 Ariz. 56, 65, ¶ 31, 163 P.3d 1006, 1015 (2007) (citations omitted) (defendant waives Batson challenges by failing to object at trial; *cf. State v. Atwood*, 171 Ariz. 576, 622, 832 P.2d 593, 639 (1992) (concluding that the court could not determine whether an identifiable underrepresentation is the result of systematic exclusion because the defendant did not provide information

that a specific group was systematically excluded), *disapproved on other grounds by State v. Nordstrom*, 200 Ariz. 229, 241 ¶25, 25 P.3d 717, 729 (2001). On this record, no fundamental, prejudicial error occurred.

## Judicial Bias

**¶18**　　　　Brown states the judge restricted his testimony because the judge struck a few of his answers and told him to "answer yes or no." The record reflects these remarks occurred during State's cross-examination and that the trial judge directed Brown to restrict his answers to the form asked by the State.

**¶19**　　　　A trial judge is presumed to be unbiased, *State v. Henry*, 189 Ariz. 542, 546, 944 P.2d 57, 61 (1997), and to rebut the presumption, a party must prove bias or prejudice by a preponderance of the evidence, *State v. Hurley*, 197 Ariz. 400, 404-05, ¶ 24, 4 P.3d 455, 459-60 (App. 2000). Our view of the record does not reveal judicial bias. Furthermore, the trial judge's directions to Brown were warranted procedurally. *See* Ariz. R. Evid. 103(d) (indicating that the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means). The record does not demonstrate any error in this regard.

## The Court's Independent Review of the Record for Fundamental Error

**¶20**　　　　Having examined the record for reversible error, *see Leon*, 104 Ariz. at 300, 451 P.2d at 881, we find none. The evidence presented supports the convictions and the sentences imposed fall within the range permitted by law. As far as the record reveals, Brown was represented by counsel at all stages of the proceedings, and these proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

**¶21**　　　　Pursuant to *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984), counsel's obligations in this appeal have ended. Counsel need do no more than inform Brown of the disposition of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. Brown has thirty days from the date of this decision in which to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.

**CONCLUSION**

¶22        Brown's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: JT